FIFTH DIVISION
October 13, 2006

No. 1-05-1813

THE PEOPLE OF THE STATE OF ILLINOIS,          Appeal from the
Circuit Court of

       Plaintiff-Appellee,                    Cook County.

v.

CHARLES JAMES,                       Honorable
Frank G. Zelezinski,

       Defendant-Appellant.             Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

In this interlocutory appeal, defendant Charles James challenges an order of the trial court disqualifying his trial counsel. Official Reports Advance Sheet No. 26 (December 24, 2003), R. 306(a)(7), eff. January 1, 2004. Defendant contends that the trial court abused its discretion in disqualifying his chosen counsel. We reverse and remand.

The parties' pleadings reveal the following facts. In September 2003, defendant and codefendant Maurice Henderson were tried simultaneously before separate juries on multiple counts of first degree murder and conspiracy to commit first degree murder. At trial, defendant was represented by attorneys Eric Dunham and Barbara Klein, and Henderson was represented by Steven Weinberg and Susan Pavlow. Henderson was acquitted of both charges. Although the jury convicted defendant of conspiracy, it

deadlocked on the first degree murder charges.  The State refiled the first degree murder charges.  Defendant subsequently discharged his attorneys and retained Weinberg and Pavlow to represent him at the retrial.  On December 1, 2003, Weinberg and Pavlow filed their respective appearances.

On May 21, 2004, the State moved to disqualify Weinberg as counsel, arguing that his prior representation of Henderson created a conflict of interest.  Henderson retained independent counsel and signed an affidavit, in which he waived any attorney-client privilege between him and Weinberg and Pavlow.  In particular, he consented to Weinberg and Pavlow's use of "any information that [Henderson] had provided to them, including but not limited to information that [Henderson] provided in confidential attorney-client conversations."  He further consented to their representation of defendant.  At the motion hearing, Weinberg indicated that Henderson would not testify.  The trial court denied the State's motion, noting that Henderson was not on any witness list and that it was unlikely that Weinberg or Pavlow would be called to testify at the retrial.

According to the pleadings, on May 5, 2005, four days before the commencement of jury selection for the retrial, Weinberg disclosed that Henderson would be called as a defense witness at the retrial.  Weinberg subsequently conducted a telephone interview with Henderson, while Henderson's new counsel listened to the call, and tendered a written report of the interview (the report) to the State.  The State then renewed its motion to disqualify Weinberg.  The report is not included in the record

1-05-1813

on appeal.

At the hearing on the motion, the State maintained that if Henderson testified inconsistently with his statements in the report or with his other prior statements, it would be forced to call Weinberg or Pavlow to impeach Henderson. The trial court granted the motion, finding that there was a conflict of interest resulting from the "extreme potential" that Weinberg and Pavlow would be called as witnesses at the retrial. The trial court noted that Pavlow and Weinberg had not represented at the earlier motion hearing that Henderson would be defendant's main witness. Defense counsel filed a motion to reconsider, which the trial court ultimately denied.

As an initial matter, defendant asserts in his reply brief that the trial court employed an improper standard in evaluating the State's motion to dismiss because it failed to determine whether defense counsel's testimony would prejudice his client. 134 Ill. 2d R. 3.7(b). We are not persuaded that the trial court was required to explicitly discuss the prejudice presented by defense counsel's potential testimony. Instead, the trial court properly employed the four-factor test for a motion to disqualify a defendant's chosen counsel based on a conflict of interest, as articulated by our supreme court in People v. Ortega, 209 Ill. 2d 354 (2004), and People v. Holmes, 141 Ill. 2d 204 (1990). Furthermore, we believe that the trial court's analysis implicitly considered the impact of defense counsel testifying against his own witness, and thus, it utilized the appropriate legal criteria in analyzing the motion.

On appeal, defendant contends that the trial court abused its discretion by

disqualifying his chosen counsel because there was no actual conflict of interest and the hypothetical scenarios for a potential conflict of interest were overly speculative. In particular, defendant argues that Henderson's waiver of attorney-client privilege negates a conflict of interest and, thus, the presumption that defendant be allowed to choose his counsel outweighs the interests threatened by the potential conflict of interest. In response, the State contends that the serious potential for a conflict of interest, *i.e.*, the likelihood that Weinberg or Pavlow would be called to impeach Henderson's trial testimony, justified the trial court's disqualification of defense counsel.

At the root of the sixth amendment guarantee that a defendant " '[i]n all criminal prosecutions *** shall enjoy the right . . . to have the Assistance of Counsel for his defense' " is the "right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. ____, ____, 165 L. Ed. 2d 409, 416, 126 S. Ct. 2557, 2561 (2006). Nevertheless, a trial court may, within its discretion, deny an attorney's representation of a defendant if it creates an actual or potential conflict of interest. Ortega, 209 Ill. 2d at 358. In evaluating a motion to disqualify a defendant's chosen counsel, a trial court must first determine whether there is actual or serious potential for conflict. Ortega, 209 Ill. 2d at 361. If it finds conflict, it must then determine whether the interests threatened by the conflict overcome the presumption favoring defendant's chosen counsel. Ortega, 209 Ill. 2d at 359, 361. In weighing the presumption against a defendant's interests, the trial court should consider four nonexclusive factors: (1) the likelihood that defense counsel will have divided

loyalties, (2) the State's right to a fair trial, (3) "the appearance of impropriety should the jury learn of the conflict," and (4) the likelihood that defense counsel's continued representation "will provide grounds for overturning [the] conviction." Ortega, 209 Ill. 2d at 361-62, citing Holmes, 141 Ill. 2d at 226-27. We review a trial court's decision against an abuse of discretion standard to determine whether it is arbitrary or unreasonable. Ortega, 209 Ill. 2d at 359.

The trial court here abused its discretion in finding serious potential for conflict. First, Henderson's waiver vitiated the attorney-client privilege and any accompanying confidentiality. The record does not indicate that the trial court sufficiently considered how Henderson's waiver would affect the potential conflict of interest. Accordingly, there was no actual or potential conflict for Weinberg and Pavlow resulting from their prior representation of Henderson.

The State relies upon Ortega and Holmes, in which our supreme court upheld a trial court's disqualification of a defendant's chosen counsel. In Holmes, the defendant's attorney had previously represented the State's key witness. Holmes, 141 Ill. 2d at 212-13. Although the defendant waived his right to a conflict-free representation, the court found that his attorney would have divided loyalties between the defendant and the State's witness because the attorney had a long-standing and ongoing relationship with the witness. Holmes, 141 Ill. 2d at 213, 226. The court was justifiably concerned about the difficulties faced by the defendant's attorney in simultaneously maintaining his obligations to his two clients. Holmes, 141 Ill. 2d at 226-27. This case is readily

distinguishable because in the case at bar, Weinberg and Henderson did not have an ongoing relationship, as Henderson's waiver dissolved their previous attorney-client relationship.

In Ortega, the law partner of the defendant's attorney previously represented a key witness for the State "in matters involving the very facts that formed the basis for the charges against defendants." Ortega, 209 Ill. 2d at 358. The witness's attorney discussed the case with the defendant's attorney because he believed that the witness had waived "any conflict of interest." Ortega, 209 Ill. 2d at 357-58. The court found serious potential for conflict resulting from the defendant's attorney being told confidential information about a State witness. Ortega, 209 Ill. 2d at 365. Although the court assumed that the witness waived a conflict of interest, it still found the existence of serious potential for conflict because the witness's waiver of confidentiality was insufficiently established. Ortega, 209 Ill. 2d at 366 (noting the crucial distinction between a waiver of conflict and a waiver of confidentiality). In particular, the court found unconvincing the vague testimony of the witness's attorney about his client's alleged waiver of confidentiality. Ortega, 209 Ill. 2d at 367-68. Here, Henderson provided a clear and valid waiver of conflict and of confidentiality, and thus, Weinberg and Pavlow could use any information received during their representation of Henderson at defendant's retrial. Therefore, Weinberg and Pavlow did not have any professional obligation to Henderson, and their previous representation of Henderson could not threaten their representation of defendant.

Second, we find that the trial court's decision to disqualify defendant's chosen counsel based on their potential to be called as impeachment witnesses was highly speculative and unreasonable. Even assuming that Henderson testified inconsistently with the written report, and Weinberg or Pavlow was called to impeach his trial testimony, we are not persuaded that this scenario justifies granting the State's motion. We do not have a copy of the written report and, as a result, cannot discern the nature or impact of Henderson's testimony. The record also does not indicate the nature of Weinberg's or Pavlow's potential testimony, and thus, speculation about the prejudice suffered by defendant from their testimony is unreasonable. Furthermore, we are not persuaded that they could provide admissible impeachment testimony against Henderson. People v. Crowe, 327 Ill. App. 3d 930, 937 (2002) (where the defendant's attorney could not be called as a rebuttal witness by the State because his testimony would constitute inadmissible hearsay).

As an alternative to Weinberg's or Pavlow's testimony, the State could call Henderson's new attorney as a "prover" of what was said during the interview. Therefore, the trial court abused its discretion in granting the State's motion to disqualify defendant's chosen counsel because there was no serious potential for conflict between defendant's interests and the duties of his attorneys.

For the foregoing reasons, we reverse the trial court's grant of the State's motion to disqualify defendant's attorneys and remand for further proceedings.

Reversed and remanded.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.